**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| 2217 FLAGLER PLACE, LLC <br><br>       Plaintiff, <br><br> v. <br><br> TOORAK CAPITAL PARTNERS, *et al.*, <br><br>       Defendants. |

Civ. Action No. 21-399 (EGS)

   Plaintiff 2217 Flagler Place, LLC ("Flagler") brings this lawsuit against Defendants Toorak Capital Partners, LLC ("Toorak") and Flatiron Realty Capital LLC ("Flatiron") alleging: (1) Violation of D.C. Act 23-328 against Toorak and Flatiron; (2) Violation of D.C. Code §28-3301 against Flatiron; and (3) Unjust enrichment against Toorak and Flatiron.

   Pending before the Court is Toorak's Motion to Dismiss, *see* Toorak Mot. to Dismiss, ECF No. 15. Upon careful consideration of the motion, opposition, reply, the applicable law, and for the reasons explained below, Toorak's Motion to Dismiss is **GRANTED**.

## I. Background

### A. Factual

   The Court assumes the following facts alleged in the complaint to be true for the purposes of deciding this motion and construes them in Flagler's favor. See *Baird v. Gotbaum*, 792

F.3d 166, 169 n.2 (D.C. Cir. 2015). This case arises from a
dispute over real estate lending during the COVID-19 Pandemic.
Flagler is a District-based company that purchases real estate.
First Am. Compl. ("FAC"), ECF No. 12 ¶ 2. Toorak is a company
that lends money. *Id*. ¶ 3. On or around July 12, 2019, Flagler
executed a promissory note secured by mortgage/deed of trust for
2217 Flagler Place in Washington, DC (the "Note") in the
original principal amount of $892,750.00, with an original
interest rate of 9.85%. *Id*. ¶¶ 9, 13. The Note was subsequently
sold to Toorak. *Id*. ¶ 14. On or about July 14, 2020, Defendant
Toorak informed Flagler that the Note was delinquent and was
"currently accruing late charges and default interest." *Id*. ¶
15.

On or about August 3, 2020, Flagler informed Toorak that
due to the Covid-19 pandemic, its "business had been crippled"
and asked about a payment extension. *Id*. ¶ 16. Toorak asked what
length of extension Flagler sought, and Flagler responded with a
request for a three-month extension. *Id*. Thereafter, Toorak
advised that it would allow an extension only after Flagler
covered the two missed payments that were due on June 1, 2020
and July 1, 2020. *Id*. ¶ 18. For each of these two payments,
Toorak charged: (1) interest and fees of $7,327.99; (2) default
interest of $10,527, and (3) a late charge of $1,319.04. *Id* ¶
19.

On or about August 28, 2020, Toorak, through counsel, advised that Flagler was in default under the Note due to failure to timely make payments under the Note. *Id*. ¶ 20. Prior to that notification, on or about August 17, 2020, Toorak sold the Note to Flatiron, but Flagler did not receive notice from Flatiron that it held the Note. *Id*. ¶ 25. On or about August 27, 2020, Special Service America, LLC ("SSA") wrote to Flagler informing it that SSA owned the Note and claimed default because of a missed interest payment on June 1, 2020. *Id*. ¶ 22. On or about December 17, 2020, SSA, "apparently on behalf of Flatiron," sent Flagler a payoff quote listing the following alleged debts and fees owed by Flagler: (1) $57,402.59 in accrued interest; (2) $68,074.67 in accrued default interest; (3) $500 for a primary servicing fee; (4) $2,2500 [sic] for a special servicing fee; (5) $750 for legal review; (6) $44,637.50 for late fees, and (7) $695 for a payoff preparation fee. *Id*. ¶ 28.

The default interest reflected in the payoff quote was a rate of 24% (9.85% + 14.15%) accruing from May 11, 2020, through December 21, 2020. *Id*. ¶ 29. From May 11, 2020, through December 21, 2020, a public health emergency period declared by the Mayor existed. *Id*. ¶ 30. Flagler paid all interest and fees claimed by SSA. *Id* at ¶ 31.

**B. Procedural**

On May 10, 2021, Toorak filed its Motion to Dismiss. *See* Toorak Mot. to Dismiss, ECF No. 15. Flagler filed its Opposition brief on May 24, 2021, *see* Opp'n, ECF No. 16; and Toorak filed its Reply brief on June 1, 2021, *see* Toorak Reply, ECF No. 21. The motion is ripe and ready for the Court's adjudication.

## II.  Standard of Review

### A. Rule 12(b)(1)

A motion to dismiss for lack of standing is properly considered a challenge to the Court's subject matter jurisdiction and should be reviewed under Federal Rule of Civil Procedure 12(b)(1). *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)("[T]he defect of standing is a defect in subject matter jurisdiction."). The Court must therefore consider the defendant's motion to dismiss pursuant to Rule 12(b)(1) before reaching a merits challenge pursuant to Rule 12(b)(6). *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). To survive a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely when

4

considering a motion to dismiss pursuant to Rule 12(b)(1) than
it would under a motion to dismiss pursuant to Rule 12(b)(6)."
*Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65
(D.D.C. 2011). In so doing, the court must accept as true all of
the factual allegations in the complaint and draw all reasonable
inferences in favor of plaintiffs, but the court need not
"accept inferences unsupported by the facts alleged or legal
conclusions that are cast as factual allegations." *Rann v. Chao*,
154 F. Supp. 2d 61, 63 (D.D.C. 2001).

### III. Analysis

#### A. Flagler Lacks Standing to Sue Toorak

"Article III of the Constitution limits the jurisdiction of
the federal courts to 'Cases' and 'Controversies.'" *Susan B.
Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting
U.S. Const. art. III, § 2). "'One element of the case-or-
controversy requirement' is that plaintiffs 'must establish that
they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568
U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818
(1997)).

To establish standing, "a plaintiff must show (1) an
'injury in fact,' (2) a sufficient 'causal connection between
the injury and the conduct complained of,' and (3) a
'likel[ihood]' that the injury 'will be redressed by a favorable
decision.'" *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting

*Lujan*, 504 U.S. at 560-61 (1992)); *see also Hollingsworth v. Perry*, 570 U.S. 700, 705 (2013) ("To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way."). These requirements help to "assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

Toorak argues that Flagler lacks standing to sue on the ground that Flagler "experienced no injury-in-fact at the hands of Toorak" because Flagler did not repay the Note until sometime after December 17, 2020 when Flatiron, not Toorak was the noteholder. Toorak Mot. to Dismiss, ECF No. 15-1 at 9. Flagler responds that since Toorak imposed the allegedly unlawful fees,

Flagler's injury is traceable to Toorak even if Toorak did not collect the fees. *See* Opp'n, ECF No. 16-1 at 6. Flagler cites no caselaw in support of this argument. *See id.*

Flagler has failed to meet its burden of establishing that it has standing to sue Toorak. As an initial matter, Flagler provides no legal support for its argument. *See* Opp'n, ECF No. 16-1 at 6. Flagler's burden is to allege "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party . . .'" *Lujan*, 504 U.S. at 560 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Here, Flager alleges that it paid SSA certain unlawful fees and seeks to recover those fees. Specifically, Flagler alleges that it "ultimately paid all interest and fees claimed by SSA (apparently on behalf of Defendant Flatiron) for fear of the further imposition of unlawful fees and interest, and was financially harmed thereby." FAC, ECF No. 12 ¶ 31. Flagler has not alleged that it paid any unlawful fees or interest to Toorak. *See generally id.* Flagler has failed to allege a causal connection between its injury—the payment of the allegedly unlawful interest and fees—and Toorak. *See Lujan*, 504 U.S. at

560. Accordingly, Toorak's Motion to Dismiss is **GRANTED**, and Toorak is **DISMISSED** from this action.[1]

**IV. Conclusion**

For the foregoing reasons, Toorak's Motion to Dismiss, ECF No. 15, is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **DATE**

---

[1] Since Flagler lacks standing to sue Toorak, the Court need not reach Toorak's additional arguments in support of dismissal.